Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1725 | **DATE** | 7/25/2001 |
| **CASE TITLE** | DAHLIN vs. JENNER & BLOCK et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 28 AUG 01 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendants' motion to dismiss is granted. The first amended complaint is dismissed in its entirety without prejudice. Plaintiff is given to August 24, 2001 to file a second amended complaint consistent with this court's opinion. Defendants are given to September 7, 2001 to answer or otherwise plead. The parties are advised that all dates are firm and will not be extended.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 26 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 19 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUL 26 AM 7:56 | 7/25/2001 | |
| JS | courtroom deputy's initials | | date mailed notice | |
| | | | JS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA L. DAHLIN,<br><br>Plaintiff,<br><br>v.<br><br>JENNER & BLOCK, L.L.C., an Illinois Limited Liability Company, RONALD R. PETERSON, ESQ., and CHRISTY L. CAMPBELL, ESQ.,<br><br>Defendants. | No. 01 C 1725 |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On May 10, 2001, plaintiff Barbara L. Dahlin, ("Dahlin") filed a five-count first amended complaint against Jenner & Block, L.L.C. ("Jenner & Block"), Ronald R. Peterson, Esq. ("Peterson"), and Christy L. Campbell, Esq. ("Campbell"). The allegations set out in the first amended complaint purport to allege negligent professional malpractice in Count I, intentional professional malpractice in Count II, breach of contract for legal services in Count III, breach of fiduciary duty in Count IV and fraud and fraudulent concealment in Count V.

On June 8, 2001, defendants filed a motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, defendants' motion to dismiss is GRANTED. The entire first amended complaint is dismissed without prejudice. Paragraph 38 subsection (k) in Count I, paragraph 43 subsections (a), (c), (d), (g), and (k) sub-

1

subsection (iii) in Count II, and paragraph 48 subsections (k), (l), (n) and (v) sub-subsection (iii) in Count III are all dismissed with prejudice. All the claims stated in Count I of the first amended complaint and paragraph 48 subsections (a)-(l) in Count III against Campbell and Peterson are dismissed with prejudice. All allegations stating a claim for intentional malpractice in Count II are dismissed with prejudice and Count IV is dismissed in its entirety with prejudice. Plaintiff has until August 24, 2001, to file a second amended complaint consistent with this opinion.

## STATEMENT OF FACTS[1]

In July 1993, Dahlin was the sole beneficiary of Uptown National Bank ("Uptown"), Land Trust No. 89-128 ("Land Trust"). The Land Trust consisted of a 48,000 square foot industrial building located at 2451 Estes Avenue, Elk Grove Village, Illinois ("Building"). In July 1993, Dahlin entered into a $925,000 mortgage ("Mortgage") with Uptown, the terms of which required the Land Trust to pay Uptown $9,000 per month in principal and interest, and an additional $6,000 per month to a real estate tax escrow maintained at Uptown for the payment of annual general real estate taxes on the Building as they became due. Also in July 1993, Dahlin entered into a "triple net lease agreement" with the C.A. Dahlin Company[2] ("Company"), the terms of which required the Company (i) to pay the Land Trust $11,595 per month in rent, (ii) to pay $6,000 directly into the Uptown real estate tax escrow, (iii) to pay all insurance premiums to insure the Building and (iv) to

---

[1] In considering the merits of a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6), the well-plead allegations of the complaint must be accepted as true. Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 (7th Cir. 1997). Accordingly, the facts alleged in plaintiff's first amended complaint are taken as true and set-out in this opinion.

[2] Plaintiff's husband, Rodney Dahlin, was involved with the operation of the Company and the ultimate sale of the Company to the Dahlin Corporation.

2

pay all costs of the Building's maintenance. The lease and its terms were carefully crafted to insure and to secure the repayment of the Mortgage.

In or about February 1997, Dahlin entered into an oral legal services agreement with Jenner & Block and Peterson to represent her and to protect her interests with respect to the preparation and execution of the new industrial lease between the Land Trust and the Dahlin Corporation ("Corporation"). At that time, Dahlin and Dahlin's husband, Rodney, presented and handed over to Jenner & Block and Peterson a copy of the then existing 1993 industrial lease between the Land Trust and the Company. Dahlin gave the 1993 lease to Jenner & Block and Peterson to ensure that agreed-upon provisions of 1993 lease be included in the new lease. Dahlin made clear to Jenner & Block and Petersen that the same provisions and identical economic terms that were contained in the 1993 lease be duplicated, contained and set forth in the new industrial lease between the Land Trust and the Corporation.

In July 1997, a new industrial lease between the Land Trust and the Corporation was prepared by Jenner & Block, Peterson and, a then associate of Jenner & Block, Ferdinand Gallo ("Gallo"). The new lease was executed in August, 1997 ("1997 Lease"). The 1997 Lease did not contain the same provisions and identical economic terms as the 1993 lease, the 1997 Lease instead wholly omitted the entire provision requiring the Corporation to pay the annual general real estate taxes on the Building.

From August, 1997 until May, 1998, however, the Corporation, itself believing that the 1997 Lease had incorporated the identical economic terms that had been contained in the 1993 lease paid (i) monthly rent to the Land Trust in the amount of $11,595, (ii) monthly real estate tax escrow payments to Uptown in the amount of approximately $6,000, (iii) all insurance premiums to insure

3

the Building and (iv) all of the Building's maintenance expenses. On May 12, 1998, however, the Corporation, notified Dahlin by letter that it had discovered that it had been erroneously paying real estate taxes for the Building and that it would no longer make future real estate tax escrow payments to Uptown because the 1997 Lease did not provide for the payment of real estate taxes. The Corporation further notified Dahlin that it intended to offset future rent payments by $58,035.20, the amount it then claimed it had already paid into the Upton real estate escrow account by mistake.

Immediately upon receipt of the notice from the Corporation, Dahlin and her husband confronted Jenner & Block, Peterson and Peterson's then legal associate, Campbell, with the fact that Jenner & Block, Peterson and Gallo had failed to include the real estate tax escrow provision in the 1997 Lease. At that time, Jenner & Block, Peterson and Campbell acknowledged that they had failed to include and insert into the 1997 Lease the real estate tax provision and advised Dahlin and her husband, *inter alia,* (i) that they would represent Dahlin should a foreclosure action be instituted by Uptown, (ii) that since Dahlin would be unable to meet her mortgage obligations to Uptown without the required Corporation tax escrow payments, the principal and interest due Uptown should no longer be paid but rather held for payment of future Jenner & Block fees, and (iii) that foreclosure on Dahlin's Building would be in her best interest. Further, Jenner & Block, Peterson and Campbell advised Dahlin that instead of making the Mortgage payments with any future rent checks she received from the tenant, Dahlin should retain the deposits to pay subsequent legal fees to Jenner & Block.

Dahlin did not make the monthly payments to Uptown as required by the Mortgage. On August 13, 1998, Uptown filed its foreclosure action against the Land Trust and Dahlin in the Circuit Court of Cook County. Jenner & Block, Peterson and Campbell entered their appearance for and

4

on behalf of the Land Trust and Dahlin in the foreclosure action and represented the Land Trust and Dahlin throughout the foreclosure proceedings. During the course of the foreclosure proceedings, Jenner & Block, Peterson and Campbell repeatedly advised Dahlin not to actively defend against the foreclosure, that the foreclosure was in her best interest and that there was no viable legal alternative. On May 27, 1999, a Judgment of Foreclosure and Sale in favor of Uptown was entered in the foreclosure proceedings and shortly thereafter, on July 1, 1999, the Cook County Circuit Court entered judgment in favor of Uptown and Dahlin lost her right, title and interest in the Building, then valued in at about $1,500,000.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows this court to dismiss a complaint that fails to state a claim upon which relief may be granted. In considering the merits of a motion made pursuant to Rule 12(b)(6), the well-plead allegations of the complaint must be accepted as true. Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 (7th Cir. 1997). In addition, all ambiguities will be construed in favor of the plaintiff. Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1205 (7th Cir. 1998). A court generally should only dismiss a complaint where it is clear that no relief could be granted with the allegations. Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). Additional facts submitted outside of the pleadings will be explicitly excluded and not considered, except those documents that are attached to the motion to dismiss, are referred to in the complaint and are central to the plaintiff's claims. Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998).

## ANALYSIS

**I.  Federal Rule of Civil Procedure 8(a)**

This complaint is dismissed in its entirety without prejudice for failure to comply with Federal Rule of Civil Procedure 8(a). Rule 8(a) requires, among other things, that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." See Cook v. Winfrey, 141 F.3d 322, 327 (7th Cir. 1998); Viacom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 775 (7th Cir. 1994)(citations omitted). Plaintiff's complaint is neither short nor plain. Accordingly, plaintiff's complaint is dismissed in its entirety, without prejudice, for failing to satisfy the requirements of Federal Rule of Civil Procedure 8(a).

**II.  Common Deficiencies of the Amended Complaint**

Notwithstanding the lack of conciseness or coherence in the first amended complaint, certain sections of the first amended complaint must also be dismissed with prejudice. This court will discuss each deficiency requiring preclusive dismissal in turn.

In general, the first amended complaint alleges two sets of possible factual circumstances which give rise to two possible causes of action for malpractice against defendants. One cause of action stems from the alleged negligence in the preparation and execution of the 1997 Lease and the second cause of action surrounds defendants' subsequent representation of Dahlin after the alleged negligent preparation and execution of the 1997 Lease.

**A.  Choice of Law**

In diversity jurisdiction, a district court applies the substantive law of the forum state, including the rules governing the choice of law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court therefore applies the

choice of law rules set forth in the Restatement (Second) of Conflicts of Law which Illinois has adopted. Ingersoll v. Klein, 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970); Suzik v. Sea-Land Corp., 89 F.3d 345, 348 (7th Cir.1996). The Second Restatement requires that a court apply the substantive law of the state with the most significant relationship to the torts at issue. Id. In this case, however, neither party raises a conflict of laws issue, therefore, the governing law is that of the forum state, Illinois. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992).

**B.    Defendants' alleged failure to advise plaintiff**

In the first amended complaint, plaintiff alleges the following:

### Count I

38.    Jenner, Peterson and Campbell failed to represent Dahlin competently and consistent with the customary and reasonable standards of care, skill and diligence that is ordinarily possessed and utilized by attorneys licensed to practice law and practicing law in the State of Illinois, *inter alia*, in one or more of the following ways:
- (k) by negligently and carelessly failing to advise Dahlin to obtain independent objective advise from other counsel when confronted with their negligent and careless conduct.

### Count II

43.    Jenner, Peterson and Campbell failed to represent Dahlin competently and consistent with the customary and reasonable standards of care, skill and diligence that is ordinarily possessed and utilized by attorneys licensed to practice law and practicing law in the State of Illinois, *inter alia*, in one or more of the following ways:
- (a) by knowingly and intentionally deciding not to advise Dahlin to obtain independent objective advice from other counsel when confronted with their negligent and careless conduct;
- (c) by knowingly and intentionally deciding to act in their own interest and contrary to the interests of Dahlin when they failed to advise Dahlin that she had many causes of action against them that would prevent foreclosure proceedings against the Building;
- (d) by knowingly and intentionally concealing from Dahlin the many causes of action Dahlin possessed against them by reason of their unprofessional conduct;
- (k) by knowingly and intentionally concealing their own unprofessional conduct (iii) in failing to advise Dahlin to obtain independent, objective advice after being confronted with their unprofessional conduct.

## Count III

48. Jenner, Peterson and Campbell breached their contract with Dahlin, *inter alia*, in one or more of the following ways:

- (k) by negligently and carelessly failing to advise Dahlin to obtain independent objective advise from other counsel when confronted with their negligent and careless conduct;
- (l) by knowingly and intentionally deciding not to advise Dahlin to obtain independent objective advice from other counsel when confronted with their negligent and careless conduct;
- (n) by knowingly and intentionally deciding to act in their own interest and contrary to the interests of Dahlin when they failed to advise Dahlin that she had many causes of action against them that would prevent foreclosure proceedings against the Building.
- (v) by knowingly and intentionally concealing their own unprofessional conduct (iii) in failing to advise Dahlin to obtain independent, objective advice after being confronted with their unprofessional conduct.

## Count IV

53. Jenner, Peterson and Campbell each breached their fiduciary duties to Dahlin, *inter alia*, in one or more of the following ways:

- (k) by negligently and carelessly failing to advise Dahlin to obtain independent objective advise from other counsel when confronted with their negligent and careless conduct;
- (l) by knowingly and intentionally deciding not to advise Dahlin to obtain independent objective advice from other counsel when confronted with their negligent and careless conduct;
- (m) by knowingly and intentionally deciding to act in their own interest and contrary to the interests of Dahlin when they failed to advise Dahlin that she had many causes of action against them that would prevent foreclosure proceedings against the Building.

A complaint against an attorney for malpractice may be couched in either contract or tort, Majumdar v. Lurie, 274 Ill.App.3d 267, 270, 653 N.E.2d 915, 918 (1st Dist. 1995)(citations omitted). Even when grounded in tort, however, a malpractice action arises out of either an express or implied contract for legal services. Id. Consequently, since the duty owed by an attorney to a client arises out of a contractual relationship, an attorney's duty is necessarily limited by the scope of the contract of engagement. Id.; see also Simon v. Wilson, 291 Ill.App.3d 495, 509, 684 N.E.2d

8

791, 801 (1st Dist. 1997)("An attorney's duty to a client is measured by the representation sought by the client and the scope of the authority conferred."); Schmidt v. Hinshaw, Culbertson, Moelmann, Hoban & Fuller, 75 Ill.App.3d 516, 522, 394 N.E.2d 559, 564 (1st Dist. 1979)("We agree that an attorney's duty to his client exists in relation to the representation sought by the client and the scope of the authority conferred."). Accordingly, in order to properly state a claim for legal malpractice where an attorney as has failed to advise a client, the client must allege that the scope of representation sought by the client included the advise that the defendant failed to give.

In the first amended complaint, Dahlin alleges that in or about February 1997, Dahlin entered into an oral legal services agreement with Jenner & Block and Peterson to represent her and to protect her interests with respect to the preparation and execution of a new industrial lease. There are no facts in the record and Dahlin does not allege any facts that any of the defendants were retained to advise Dahlin "independently and objectively as to possible courses of against in connection with their own alleged negligent or carelessly representation of Dahlin." As a result, Jenner & Block's and Peterson's duty toward Dahlin was necessarily limited to the preparation and execution of a new industrial lease. Allegations in the first amended complaint, therefore, that state that defendants had duty to Dahlin to "independently and objectively" advise Dahlin as to possible courses of against defendants in connection with the alleged negligent representation of Dahlin in preparation and execution of the 1997 Lease are all dismissed with prejudice.

C. **Statute of Limitations**

Section 13-214.3(b) of the Illinois Code of Civil Procedure provides:

An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services. . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have

9

known of the injury for which damages are sought. 735 ILCS 5/13-214.3 (West 2001).

Defendants argue that the first amended complaint should dismiss in its entirety as to defendants Peterson and Campbell because any potential claims plaintiff may have had against Peterson and Campbell are now barred by the two-year statute of limitations.[3] Dahlin argues that the statute of limitations has not expired as to defendants Peterson and Campbell because her claims against Peterson and Campbell did not accrue until July 1, 1999.

To prevail in any legal malpractice action, a plaintiff must allege and prove the following elements: (1) the existence of an attorney/client relationship; (2) a duty arising from that relationship; (3) a breach of that duty on the part of the defendant/counsel; (4) proximate cause; and (5) damages. Palmros v. Barcelona, 284 Ill.App.3d 642, 646, 672 N.E.2d 1245, 1247 (2nd Dist. 1996); Sharpenter v. Lynch, 233 Ill.App.3d 319, 323, 599 N.E.2d 464, 467 (1992); Sheppard v. Krol, 218 Ill.App.3d 254, 256-57, 578 N.E.2d 212, 214 (1991); Bartholomew v. Crockett, 131 Ill.App.3d 456, 465, 475 N.E.2d 1035 (1985). It follows, therefore, that the statute of limitations for filing an action against an attorney does not start until there is an "injury for which damages are sought." Palmros, 284 Ill.App.3d at 646, 672 N.E.2d at 1247. The "injury" that begins the limitations period is not the negligent act or omission, instead the limitations period begins when there is a loss caused by the negligent act or omission. Id. Accordingly, to properly calculate whether the statute of limitations has expired the threshold issue is when did plaintiff incurred damages as a proximate result of

---

[3]Plaintiff and defendant Jenner & Block entered into a "Tolling Agreement" that relates solely to the calculation of the limitations period for any claims that could be brought by or against Jenner & Block. No such "Tolling Agreement" has been entered into by plaintiff and the remaining defendants.

10

defendants' alleged negligence. See Palmros, 284 Ill.App.3d at 646-7, 672 N.E.2d at 1247-8 ("We do not believe that the limitations period can start before all the elements of a cause of action are present. Therefore, we reject any suggestion that the negligent act itself starts the limitations period running.").

In this case, since there are potentially two different causes of action for malpractice there are two different statute of limitations periods. As for the alleged malpractice in the preparation and execution of the 1997 Lease, Dahlin alleges in the first amended complaint the following:

> Thereafter, on or about May 12, 1998, the Tenant, Dahlin Corporation, notified Dahlin by letter that it had discovered that it had been erroneously paying real estate taxes for the Building and that it would no longer make future real estate tax escrow payments to Uptown because the Jenner Lease did not provide for the payment of real estate taxes. The Tenant further notified Dahlin that it intended to offset future rent payments by $58,035.20, the amount it then claimed it had already paid into the Upton real estate escrow account by mistake. (First Amend. Compl. ¶23).

Based on these allegations, the statute of limitations for this alleged malpractice did not begin until June 30, 1998, at the latest, depending on when rent and tax for the month of June were due and assuming that rent and tax for the month of May were paid. Accordingly, all claims stemming for the negligent preparation and execution of the 1997 Lease needed to have been filed by June 30, 2000. Plaintiff first filed this complaint against defendants March 12, 2001, after the limitations period had already expired. As a result, Count I, in its entirety, and Count III, paragraph 43 subsections (a)-(l), as well as Count IV, paragraph 53 subsections (a)-(l) all alleging malpractice against Campbell and Peterson for the negligent preparation and execution of the 1997 Lease are all time-barred and dismissed with prejudice.

As for the alleged malpractice surrounding defendants' subsequent representation of Dahlin after the alleged negligent preparation and execution of the 1997 Lease, this court finds that the

11

statute of limitations period began to run on July 1, 1999, when judgment was entered against Dahlin in the foreclosure proceedings and "Dahlin lost forever her right, title and interest in and to the Building, then valued in excess of $1,500,000." (Amend. Compl. ¶34). Therefore, July 1, 2001, was the last day that any claims stemming for the subsequent representation of Dahlin could be filed. Since, this complaint was filed on March 12, 2001, before July 1, 2001, allegations against defendants stemming from the subsequent representation of Dahlin are not time-barred.

### D. Damages

As an initial matter, the Illinois State Legislature abolished punitive damages in healing art and legal malpractice cases effective August 15, 1985, by the adoption of section 2-1115 which provides:

> Punitive damages not recoverable in healing art and legal malpractice cases. In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed. Ill.Rev.Stat.1989, ch. 110, par. 2-1115 added by P.A. 84-7, § 1, effective August 15, 1985.

It is also well-settled that damages from legal malpractice must be incurred and are not presumed, Farm Credit Bank v. Gamble, 197 Ill.App.3d 101, 103, 143 Ill.Dec. 844, 554 N.E.2d 779 (1990)), that the plaintiff must affirmatively plead and prove that he suffered injuries as a result of the attorney's malpractice and that no malpractice exists unless counsel's negligence has resulted in the loss of an underlying cause of action, or the loss of a meritorious defense if the attorney was defending in the underlying suit. Id. at 122, 502 N.E.2d at 1190; see also Bartholomew, 131 Ill.App.3d at 456, 475 N.E.2d 1035. Accordingly, an injured party is only entitled to recover the amount of actual damages incurred as a result of the malpractice or an amount that would put the party in as good a position as the party would have been in had the contract been performed as

12

agreed. Collins v. Reynard, 154 Ill.2d 48, 50, 607 N.E.2d 1185, 1186 (1992). In looking at the first amended complaint, paragraphs 39, 44, 45, 50, 54, and 55 must be re-drafted to allege only actual damages incurred by the result of defendant's alleged malpractice or re-drafted to allege a specific amount that would put plaintiff in as good a position as she would have been if any alleged contract had been performed as agreed

### E. Professional Misconduct

It is well-settled in Illinois that there is no independent cause of action for breach of professional responsibility or professional ethics. See Scheib v. Grant, 22 F.3d 149, 156 (7th Cir.1994) (there is no professional responsibility tort in Illinois), cert. denied, 115 S.Ct. 320 (1994); Zanders v. Jones, 680 F.Supp. 1236, 1239 (N.D.Ill.1988) (the law is clear that the code of professional responsibility does not create any private right of action), aff'd, 872 F.2d 424 (7th Cir.1989). Plaintiff alleges, however, in paragraph 43 subsection (g) in Count II of the first amended complaint the following:

> [Defendants failed to represent Dahlin competently] (g) by knowingly and intentionally entering their appearance on behalf of the Land Trust and Dahlin in the foreclosure proceedings while possessing an obvious conflict between the best interests of Dahlin and their own best interests.

Paragraph 48 subsections (o) and (r) in Count III, and paragraph 53 subsections (m) and (o) in Count IV make similar allegations. Dahlin has not cited, and nor has this court found, any Illinois authority which recognizes a cause of action for "conflict of interest" against an attorney independent from a breach of fiduciary duty or legal malpractice claim. Accordingly, paragraph 43 subsection (g) in Count II, paragraph 48 subsections (o) and (r) in Count III, and paragraph 53 subsections (m) and (o) in Count IV are all dismissed with prejudice.

## III. Count I: Campbell's Role in the Preparation and Execution of the 1997 Lease

Defendants argue that this court should dismiss Count I in its entirety as to defendant Campbell because plaintiff does not allege nor are there any set of facts in the record to support a finding that Campbell and Dahlin had an attorney-client relationship during the preparation, drafting or execution of the 1997 Lease. As a general rule, an attorney owes a duty only to one who is a client. Simon, 291 Ill.App.3d at 509, 684 N.E.2d at 801, an attorney generally has no duty to someone who is not their client and an individual does not have a cause of action for malpractice against an attorney who does not represent them. Id. Dahlin specifically alleges in the first amended complaint that Dahlin entered into an oral legal services agreement with Jenner & Block and Peterson to represent her and to protect her interests with respect to the preparation and execution of a new industrial lease. In addition, in response to this motion to dismiss Dahlin admits that Campbell worked with Dahlin after the 1997 Lease had already been prepared and executed. Dahlin's admissions in the first amended complaint and her arguments in response to this motion to dismiss undermine allegations set forth in Count I of the first amended complaint that Campbell was retained by Dahlin to prepare the 1997 Lease. Accordingly, Dahlin has plead herself out of court as to any claim of action of malpractice against Campbell in connected with the preparation and execution of the 1997 Lease. Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999). Count I alleging malpractice in the preparation and execution of the 1997 Lease is dismissed in its entirety with prejudice as to defendant Campbell.

## IV. Count II: Intentional Professional Malpractice

Plaintiff alleges, in Count II of the first amended complaint, intentional malpractice surrounding defendants' subsequent representation of Dahlin after the alleged negligent preparation

14

and execution of the 1997 Lease. In general, malpractice is a negligence theory of recovery, Lindgren v. Moore, 907 F.Supp. 1183, 1189 (N.D.Ill. 1995)(citing Horak v. Biris, 130 Ill.App.3d 140, 85 Ill.Dec. 599, 603, 474 N.E.2d 13, 17 (2d Dist.1985)), and after an exhaustive search of Illinois law this court could find no cases involving a cause of action for intentional legal malpractice. Accordingly, all allegations in Count II of the first amended complaint alleging a claim of intentional malpractice must be dismissed with prejudice.

## V. Count III: Breach of Contract for Legal Services

In Count III of the first amended complaint, plaintiff repeats the allegations previously stated in Counts I and II as a claim for breach of contract. As stated earlier, a complaint against a lawyer for professional malpractice may be couched in either contract or tort, and recovery may be sought in the alternative.[4] See Collins, 154 Ill.2d 48, 50, 607 N.E.2d 1185, 1186 (1992). Regardless of how a complaint is couched, however, the same two-year statute of limitations applies. 735 ILCS 5/13-214.3 (West 2001). Count III, paragraph 48 subsections (a) - (l) all deal with a breach of contract in the preparation and execution of the 1997 Lease and Count III, paragraph 48 subsections (m)-(v) all deal with a breach of contract in defendants subsequent representation of Dahlin after the alleged negligent 1997 Lease.

Under Illinois law, the four elements required to establish a breach of contract claim include: 1) a valid and enforceable contract; 2) performance of contractual duties by plaintiff; 3) breach of contractual duties by defendant; and 4) resulting damages to plaintiff. Hickox v. Bell, 195 Ill.App.3d

---

[4] The allegations in Count III should have been broken up into two separate counts of breach on contract based on two separate possible theories of legal malpractice and plead in the alternative of Counts I and II respectively.

976, 992, 552 N.E.2d 1133, 1143 (5th Dist. 1990)(citations omitted). In the first amend complaint, however, Dahlin only alleges she entered into an oral legal services agreement with Jenner & Block and Peterson to represent her and to protect her interests with respect to the preparation and execution of the 1997 Lease. Accordingly, paragraph 48 subsections (a)-(l) in Count III are dismissed with prejudice as to defendant Campbell. Furthermore, paragraph 48 subsections (m)-(v) are all dismissed without prejudice because no valid and enforceable contract has been alleged in connection with defendants' subsequent representation of Dahlin after the alleged negligence with the 1997 Lease.

## VI. Count IV: Breach of Fiduciary Duty

Similar to Count III, Count IV of the first amended complaint repeats the allegations previously stated in Counts I and II. In Count IV, however, Dahlin alleges breach of fiduciary duty. In Majumdar, 274 Ill.App.3d 267, 653 N.E.2d 915, the plaintiff filed similar claims for breach of contract and breach of fiduciary duty which mimicked legal malpractice claims already alleged. The Illinois Appellate Court affirmed the dismissal of both the breach of contract and breach of fiduciary duty claims as duplicative. Id. at 273-74, 653 N.E.2d at 920-21. "[W]hen, as in this case, the same operative facts support actions for legal malpractice and breach of fiduciary [duty] resulting in the same injury to the client, the actions are identical and the later should be dismissed as duplicative. Id. Similarly, in Calhoun v. Rane, 234 Ill.App.3d 90, 599 N.E.2d 1318 (1st Dist.1992), the court also affirmed the dismissal of a breach of fiduciary duty claim that mirrored the plaintiff's legal malpractice claim. The court held that the plaintiff had "not plead a cause of action for breach of fiduciary duty distinct from the alleged malpractice case still pending in the trial court. A duplicative count may be properly dismissed (Nagy v. Beckley (1991), 218 Ill.App.3d 875, 879, 161 Ill.Dec.

16

488, 578 N.E.2d 1134), and as the aforementioned language of counts I and II demonstrates, the allegations in the two counts are virtually identical." Id. at 95, 599 N.E.2d at 1321.

Since it is possible to plead separate non-duplicative counts of professional negligence and breach of fiduciary duty in the same complaint, see Calhoun, 234 Ill.App.3d at 95, 599 N.E.2d at 1321, the relevant inquiry in this case is whether the breach of fiduciary duty alleged in Count IV alleges anything not alleged in the malpractice claims of Count I or Count II. Upon further review, this court finds that Count IV does not alleged anything that has not already been alleged as malpractice in Counts I or II. Accordingly, Count IV is dismissed in its entirely with prejudice as duplicative. See Metrick v. Chatz, 266 Ill.App.3d 649, 656, 639 N.E.2d 198, 203 (1st Dist. 1994)(dismissing breach of fiduciary count as doing nothing more than mirroring previous allegations of legal malpractice); Kirkland & Ellis v. CMI Corp., No. 95 C 7457, 1996 WL 559951, at *9 (N.D.Ill. Sept. 30, 1996).

### VII. Count V: Fraud and Fraudulent Concealment

Count V alleges fraud and fraudulent concealment. To state a claim for fraud, a plaintiff must allege: (1) that defendant made a statement or omission; (2) that the statement or omission was material; (3) that the statement was untrue; (4) that the defendant knew the statement was untrue or was in culpable ignorance of the statement's veracity; (5) that defendant had the intent that plaintiff rely on the statement; (6) that plaintiff actually relied on the statement; and (7) the reliance resulted in damages to the plaintiff. Small v. Sussman, 713 N.E.2d 1216, 1221 (Ill.App.1999). In addition to these elements, a plaintiff pleading fraud in federal court must satisfy the particularity requirements of Federal Rule of Civil Procedure Rule 9(b). See Rose v. MONY Life Ins. Co., 2001 WL 214200 at *5 (N.D.Ill. 2001).

Federal Rule of Civil Procedure 9(b) states that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. In other words, Rule 9(b) mandates that the plaintiff to specifically allege the who, what, where, and when of the alleged fraud. Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 469. (7th Cir. 1999). The purpose of requiring that fraud be pleaded with particularity is to force the plaintiff to do more than the usual investigation before filing a complaint. Id. Greater pre-complaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise, and because fraud is frequently charged irresponsibly by people who have suffered a loss and want to find someone to blame. Id.

Upon further review of Count V, this court finds that Count V merely repeats the allegations of Counts I and II and fails to specifically allege the who, what, where, and when of the alleged fraud and fraudulent concealment. In addition, this court finds that Count V of the first amended complaint fails to allege the materiality of any statements made by defendants or omissions of defendants and fails to allege the lack of veracity as to any statements made by defendants to plaintiff. Accordingly, Count V is dismissed in its entirety without prejudice.

## CONCLUSION

For the above stated reasons, defendants' motion to dismiss is GRANTED. The first amended complaint is dismissed in its entirety without prejudice. Paragraph 38 subsection (k) in Count I, paragraph 43 subsections (a), (c), (d), (g), and (k) sub-subsection (iii) in Count II, and paragraph 48 subsections (k), (l), (n) and (v) sub-subsection (iii) in Count III are all dismissed with prejudice. All the claims stated in Count I of the amended complaint and paragraph 48 subsections (a)-(l) in Count III against Campbell and Peterson are dismissed with prejudice. All allegations stating a claim for intentional malpractice in Count II are dismissed with prejudice and Count IV in its entirety is dismissed with prejudice. Plaintiff is ordered to file a clear, concise, non-repetitive, and otherwise well-pleaded second amended complaint consistent with this opinion by August 24, 2001. Defendants are given until September 7, 2001 to answer or otherwise plea. Failure to file a second amended complaint consistent with all of the mandates set out in this opinion and consistent with the law of Illinois will result in an automatic dismissal of this case in its entirety with prejudice at 4:30 P.M. on August 24, 2001 without further notice for failure to state a claim. In order to allow this litigation to continue on in a timely manner, no extensions of time will be given. The parties are urged to discuss settlement. This case is set for report on status on August 28, 2001 at 9:00 A.M.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: July 25, 2001