# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

AUG 2 4 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| BARBARA L. DAHLIN,<br>an individual, | ) |
| | ) |
| Plaintiff, **DOCKETED** | ) |
| | ) Case No. 01 C 1725 |
| AUG 27 2001 | ) |
| v. | ) |
| | ) Hon. James F. Holderman |
| JENNER & BLOCK, L.L.C., an<br>Illinois Limited Liability Company, | ) |
| | ) Magistrate Judge Morton Denlow |
| Defendants. | ) |

## NOTICE OF FILING

**TO**: Ann Kimball, Esq.
Vilia Drazdys, Esq.
Wildman Harrold Allen & Dixon
225 West Wacker Drive, Suite 3000
Chicago, Illinois 60606

**PLEASE TAKE NOTICE** that on Friday, August 24, 2001, I caused to be filed with the

Clerk of the United States District Court, Northern District of Illinois, Eastern Division, **Plaintiff's**

**Second Amended Complaint**, copies of which are attached hereto and served upon you herewith.

BURKE BURNS & PINELLI, LTD.

One of the Attorneys for Plaintiff

Vincent D. Pinelli, Esq.
R. Bruce Slocum, Esq.
**Burke Burns & Pinelli, Ltd.**
Three First National Plaza, #3910
Chicago, Illinois 60602
(312) 541-8600



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

BARBARA L. DAHLIN,                    )
an individual,                         )
                                       )
                Plaintiff,             )
                                       )       AUG 27 2001
        v.                             )       Case No. 01 C 1725
                                       )
JENNER & BLOCK, L.L.C., an             )       Hon. James F. Holderman
Illinois Limited Liability Company,    )
RONALD R. PETERSON, ESQ., and          )       Magistrate Judge Morton Denlow
CHRISTY L. CAMPBELL, ESQ.,             )
                                       )
                Defendants.            )

FILED

AUG 2 4 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiff, Barbara L. Dahlin ("Dahlin"), by and through her attorneys,

Edward J. Burke, Vincent D. Pinelli and R. Bruce Slocum, and for her Second Amended Complaint

against Defendants Jenner & Block, L.L.C., ("Jenner"), Ronald R. Peterson, Esq., ("Peterson") and

Christy L. Campbell, Esq., ("Campbell") (collectively the "Defendants"), states as follows:

### Preliminary Statement

1.      This action seeks relief for legal malpractice against Jenner, Peterson and Campbell

for negligently performing their obligations to provide competent legal services to Dahlin or in the

alternative, for breaching their agreements with Dahlin to perform their legal services in a competent

manner. First, Jenner negligently prepared an Industrial Building Lease and wholly failed to include

essential and previously agreed upon provisions required to protect Dahlin's legitimate business

interests. Thereafter, Jenner, Peterson and Campbell committed legal malpractice in negligently

representing Dahlin relating to all legal matters which arose out of negligently drafted lease. This

action also seeks relief against all the Defendants for fraudulently concealing their malpractice in order

to continue to represent and collect legal fees from the plaintiff thereby holding their interests paramount to the interests of Dahlin.

## Parties

2.      Dahlin is an adult resident of the State of Michigan.

3.      Jenner is an Illinois limited liability company with its principal place of business located in Chicago, Illinois, and is engaged in the practice of law.

4.      Peterson is an adult resident of the State of Illinois, an attorney licensed to practice law in the State of Illinois, a member of Jenner and engaged in the practice of law.

5.      Campbell is an adult, former resident of the State of Illinois, an attorney licensed to practice law in the State of Illinois and, at all relevant times, practiced law with Jenner.

## Jurisdiction And Venue

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(a)(1), as the amount in controversy exceeds $75,000, exclusive of interests and costs, and because the action is between citizens of different states.

7.      This Court has personal jurisdiction over the defendants as the defendants, at all times relevant, were doing business in Illinois.

8.      Venue is proper under 28 U.S.C. 1391(a), as a substantial part of the events giving rise to the claims asserted occurred in this District and the defendants are subject to personal jurisdiction in this District.

## Common Factual Background

9.      In July, 1993, Dahlin was the sole beneficiary of Uptown National Bank ("Uptown"), Land Trust No. 89-128 ("Land Trust"). The corpus of the Land Trust consisted of a 48,000 square

2

foot industrial building located at 2451 Estes Avenue, Elk Grove Village, Illinois ("Building").

10.     Prior to July 1993, Dahlin caused the Land Trust to enter into an approximately $925,000 mortgage with Uptown, the terms of which *inter alia,* required the Land Trust to pay Uptown $9,000 per month in principal and interest, and an additional approximately $6,000 per month to fund a real estate tax escrow maintained at Uptown for the payment of annual general real estate taxes on the Building as they became due ("Mortgage").

11.     Further, in July, 1993, Dahlin caused the Land Trust to enter into a triple net lease agreement with the C.A. Dahlin Company, the terms of which required the C.A. Dahlin Company (i) to pay the Land Trust (Dahlin) $11,595 per month in rent, (ii) to pay the sum of approximately $6,000 directly into the Uptown real estate tax escrow, (iii) to pay all insurance premiums to insure the Building and (iv) to pay all costs of the Building's maintenance.  The lease and its terms were carefully crafted to insure and to secure the repayment of the Mortgage, to maintain ownership of the Building and to provide income to Dahlin.

12.     Between about February, 1997 and September, 1997, and for some time prior thereto, Jenner and Peterson were continuously representing Dahlin's husband, Rodney Dahlin, ("Rodney") in many diverse personal and business legal matters, including legal issues in connection with the sale of the business assets of the C.A. Dahlin Company.

13.     Between February, 1997 and September, 1997, as an integral part of Rodney's sale of C.A. Dahlin Company's business assets, Rodney and the asset purchaser, the Dahlin Corporation, both agreed and required that the purchasing corporation enter into a new industrial lease with the Land Trust upon the same provisions and identical economic terms that were contained in the 1993 industrial lease between the Land Trust and the C.A. Dahlin Company.

3

14.     In or about February, 1997, Dahlin entered into an oral legal services agreement with Jenner and Peterson to represent her and to protect her interests with respect to the preparation and execution of the new industrial lease between the Land Trust (of which she remained sole beneficiary) and the purchasing corporation, the Dahlin Corporation, that was required to occur as a part of the asset sale.

15.     Also, in or about February, 1997, Dahlin and Dahlin's husband, Rodney presented and handed over to Jenner and Peterson a copy of the then existing 1993 industrial lease between the Land Trust and the C.A. Dahlin Company that contained the agreed upon provisions and the essential economic terms so that Jenner and Peterson would be sure to include the same terms in the new industrial lease.

16.     In or about February, 1997 and thereafter on many other occasions prior to August, 1997, both Dahlin and her husband, Rodney, repeatedly informed, told and instructed Jenner and Peterson that the same provisions and identical economic terms that were contained in the 1993 industrial lease between the Land Trust and the C.A. Dahlin Company must be duplicated, contained and set forth in the new industrial lease between the Land Trust and the Dahlin Corporation.

17.     Further, in or about February, 1997 and thereafter on many other occasions prior to August, 1997, both Dahlin and her husband, Rodney, repeatedly informed, told and instructed Jenner and Peterson to include the identical economic terms in the new industrial lease so as to insure and to secure Dahlin's repayment obligations of the Mortgage to Uptown. Jenner and Peterson repeatedly acknowledged said instructions and stated that they would keep the same provisions and identical economic terms aforesaid in the new industrial lease and would only "clean it (the lease form) up."

4

18.     Thereafter, in or about June and July, 1997, Jenner, Peterson and, a then associate of Jenner, Ferdinand Gallo ("Gallo"), prepared the new industrial lease between the Land Trust and the Dahlin Corporation and, after preparation, instructed Dahlin to execute the new lease, while simultaneously sending a copy of said lease to the Dahlin Corporation.  In or about August, 1997, the Dahlin Corporation executed the new lease.

19.     The new lease prepared by Jenner, Peterson and Gallo ("Jenner Lease") did not contain the same provisions and identical economic terms as the 1993 lease between the Land Trust and C.A. Dahlin Company as had been expressly agreed upon, but rather had wholly omitted material provisions and material economic terms such that it was no longer possible for the Land Trust (and Dahlin) to insure and secure the repayment of the Mortgage to Uptown.

20.     Specifically, the Jenner Lease was not the agreed upon triple net lease.  Further it omitted the entire provision requiring the new tenant, the Dahlin Corporation, to pay the annual general real estate taxes on the Building which, at the time, was in excess of $6,000 per month.

21.     From August, 1997 until May, 1998, however, the Dahlin Corporation, itself believing that the Jenner Lease had incorporated the identical economic terms that had been contained in the 1993 lease between the Land Trust and the C.A. Dahlin Company, including the real estate tax escrow payments provision, acted upon its belief and began to pay and did pay the (i) monthly rent to the Land Trust in the amount of $11,595, (ii) monthly real estate tax escrow payments to Uptown in the amount of approximately $6,000, (iii) all insurance premiums to insure the Building and (iv) all of the Building's maintenance expenses.

22.     Further, from August, 1997 until May, 1998 the Land Trust (Dahlin) accepted the monthly payments aforesaid from the Dahlin Corporation and, in turn, used the payments, as it had

5

always done previously, to repay the Mortgage to Uptown in accordance with the terms of the Mortgage.

23.     Thereafter, on or about May 12, 1998, the Tenant, Dahlin Corporation, notified Dahlin by letter that it had discovered that it had been erroneously paying real estate taxes for the Building and that it would no longer make future real estate tax escrow payments to Uptown because the Jenner Lease did not provide for the payment of real estate taxes. The Tenant further notified Dahlin that it intended to offset future rent payments by $58,035.20, the amount it then claimed it had already paid into the Upton real estate escrow account by mistake.

24.     Immediately upon receipt of the notice from the Dahlin Corporation, Dahlin, and her husband Rodney, asked to meet with Jenner and Peterson. Peterson and Campbell met with the Dahlins to discuss the fact that Jenner had failed to include and insert any tax escrow provision into the Jenner Lease and had failed and omitted to include and insert the material economic term of requiring the monthly payment of at least $6,000 to be paid directly to the Uptown tax escrow pursuant to the terms of the Mortgage, as had been agreed upon.

25.     In the meeting, Peterson and Campbell acknowledged to Dahlin and her husband that Jenner had failed to include and insert into the Jenner Lease the material terms aforesaid. Thereafter, Peterson and Campbell stated that they and Jenner would undertake the continued representation of Dahlin in any matters relating to or arising from the drafting of the Jenner Lease and the refusal of the Tenant to pay the monthly tax escrow fee. Dahlin was persuaded to accept the continued representation by the Defendants.

26.     Dahlin explained to the Defendants that she could not afford to pay the monthly tax escrow payment, nor could she financially endure the retention by the Tenant of $58,035.20 which

6

the Tenant claimed it had mistakenly paid to the tax escrow account. Peterson and Campbell advised, *inter alia,* (i) that they would represent Dahlin should a foreclosure action be instituted by Uptown, (ii) that since Dahlin would be unable to meet her mortgage obligations to Uptown without the required Dahlin Corporation tax escrow payments, the principal and interest payment of $9,000 due Uptown should no longer be paid to Uptown but, rather, held for payment of future Jenner fees, and (iii) that foreclosure on Dahlin's Building would be in her best interest.

27. As a result of the advice given to her by the Defendants, Dahlin discontinued making the monthly mortgage payments and retained rent proceeds from the Building to pay the Defendants legal fees.

28. Thereafter, on August 13, 1998, Uptown filed its foreclosure action against the Land Trust and Dahlin in the Circuit Court of Cook County for lack of monthly payments by Dahlin under the terms of the Uptown Mortgage. Jenner, Peterson and Campbell entered their appearance for and on behalf of the Land Trust and Dahlin in the foreclosure action and represented the Land Trust and Dahlin throughout the foreclosure proceedings.

29. During the course of the foreclosure proceedings Jenner, Peterson and Campbell repeatedly advised Dahlin not to actively defend against the foreclosure, that the foreclosure was in her best interest and that there was no viable legal alternative. Jenner knew or should have known that an independent or third-party cause of action against Jenner for their negligent drafting of the lease was the appropriate course of action for Dahlin relating to the foreclosure action. As a result, the Defendants had a conflict of interest in representing Dahlin in the foreclosure action. Further, they failed to defend Dahlin against Uptown's Motion for Summary Judgment and, in fact, withdrew a previously filed responsive pleading to that Motion.

7

30.     At all relevant times, Dahlin placed her utmost trust and confidence in Jenner, Peterson and Campbell with respect to their advice and the legal actions purportedly taken on her behalf both with respect to the preparation of the industrial lease and with respect to their representation of her in the foreclosure proceeding.

31.     At no time did Jenner, Peterson or Campbell advise Dahlin that she had various causes of action against them for: (i) their negligent actions in respect to their preparation of the industrial lease; and (ii) in connection with their representation of her interests throughout the foreclosure proceedings, including a third-party claim against the Defendants to pay off the Uptown Mortgage on the Building.

32.     At no time did Jenner, Peterson and Campbell advise Dahlin of their conflict of interest in continuing to represent Dahlin after the Defendants became aware that the Jenner Lease had been drafted negligently.

33.     Dahlin agreed to and did in fact pay Jenner, Peterson and Campbell thousands of dollars for their legal services rendered in respect to the preparation and execution of the new industrial lease and their representation of her in the foreclosure proceedings.  Moreover, at all times Dahlin performed all that she was obligated to perform by reason of her oral legal services agreement with Jenner, Peterson and Campbell.

34.     On May 27, 1999, a Judgment of Foreclosure and Sale in favor of Uptown was entered of record in the foreclosure proceedings and shortly thereafter, on July 1, 1999, the Court entered in favor of Uptown (i) its order approving the Report of Sale and Distribution, (ii) its order Confirming the Sale, and (iii) its order of Possession.  On that day, Dahlin lost forever her right, title and interest in and to the Building, then valued in excess of $1,500,000.

8

**Count I**
**First Professional Negligence Claim**
**Against Jenner**

35.    Dahlin restates and realleges paragraphs 1 through 34 as paragraph 35 of Count I.

36.    At all relevant times, an attorney-client relationship existed between Dahlin and Jenner.

37.    As counsel to Dahlin, Jenner had a duty to represent Dahlin competently and consistent with the customary and reasonable standards of care, skill and diligence that is ordinarily possessed and utilized by attorneys licensed to practice law and practicing law in the State of Illinois.

38.    Jenner failed to represent Dahlin competently and consistent with the customary and reasonable standards of care, skill and diligence that is ordinarily possessed and utilized by attorneys licensed to practice law and practicing law in the State of Illinois, *inter alia*, in one or more of the following ways:

(a)    by negligently and carelessly failing to follow Dahlin's instructions to prepare a triple net industrial lease between the Land Trust and the Dahlin Corporation;

(b)    by negligently and carelessly failing to prepare and provide a triple net lease between the Land Trust and the Dahlin Corporation;

(c)    by negligently and carelessly failing to conform the Jenner Lease to the provisions and terms of the 1993 lease between the Land Trust and the C.A. Dahlin Company;

(d)    by negligently and carelessly failing to include and provide in the Jenner Lease any provision whatever in respect to the payment of real estate taxes;

(e)    by negligently and carelessly failing to include and provide in the Jenner Lease a provision requiring the Dahlin Corporation to pay the general real estate taxes on the Building;

9

(f)     by negligently and carelessly failing to include and provide in the Jenner Lease a provision requiring the Dahlin Corporation to pay monthly at least $6,000 directly into the Uptown tax escrow for the payment of the real estate taxes on the Building as they were to come due;

(g)     by negligently and carelessly failing to include and provide in the Jenner Lease the necessary economic terms and provisions to insure and secure the repayment of the Land Trust's (Dahlin's) Mortgage to Uptown on the Building.

(h)     by negligently and carelessly failing to review the terms and provisions of the Jenner Lease prior to presenting the lease to Dahlin for signature;

(i)     by negligently and carelessly failing to review the terms and provisions of the Jenner Lease with Dahlin prior to instructing Dahlin to execute the lease; and

(j)     by negligently and carelessly failing to review the terms and provisions of the Jenner Lease prior to sending the Lease to Dahlin and the Dahlin Corporation for signature.

39.     As a direct and proximate result of Jenner's careless and negligent conduct, Dahlin suffered damages, including, but not limited to: lost profits for the remaining term of the Jenner Lease; lost income necessary to satisfy the tax escrow payments on the Building; and, all fees paid to Jenner for the drafting of the Jenner Lease.

WHEREFORE, Dahlin requests the Court to enter judgment in her favor and against Jenner in an amount in excess of $300,000 for (i) actual compensatory and consequential damages that directly and proximately resulted from Jenner's negligence, (ii) the return of any attorney's fees and costs paid by Dahlin to Jenner, (iii) post judgment interest at the maximum rate allowed by law, and (iv) such other and further legal and equitable relief that the Court deems just.

**Count II**
**First Breach of Contract Claim**
**Against Jenner**

40.     Dahlin restates and realleges paragraphs 1 through 39 as paragraph 40 of Count II.

41.     In or about July 1997, Dahlin and Jenner entered into an oral agreement for legal services.

42.     Jenner breached its contract with Dahlin, *inter alia,* in one or more of the following ways:

(a)     by failing to follow Dahlin's instructions to prepare a triple net industrial lease between the Land Trust and the Dahlin Corporation;

(b)     by failing to prepare and provide a triple net lease between the Land Trust and the Dahlin Corporation;

(c)     by failing to conform the Jenner Lease to the provisions and terms of the 1993 lease between the Land Trust and the C.A. Dahlin Company as instructed by Dahlin;

(d)     by failing to include and provide in the Jenner Lease any provision whatever in respect to the payment of real estate taxes;

(e)     by failing to include and provide in the Jenner Lease a provision requiring the Dahlin Corporation to pay the general real estate taxes on the Building;

(f)     by failing to include and provide in the Jenner Lease a provision requiring the Dahlin Corporation to pay monthly at least $6,000 directly into the Uptown tax escrow for the payment of the real estate taxes on the Building as they were to come due;

(g)     by failing to include and provide in the Jenner Lease the necessary economic terms and provisions to insure and secure the repayment of the Land Trust's (Dahlin's)

11

mortgage to Uptown on the Building.

(h)    by failing to review the terms and provisions of the Jenner Lease prior to presenting the lease to Dahlin for signature;

(i)    by failing to review the terms and provisions of the Jenner Lease with Dahlin prior to instructing Dahlin to execute the lease;

(j)    by failing to review the terms and provisions of the Jenner Lease prior to sending the lease to Dahlin and the Dahlin Corporation for signature;

43.    Dahlin, on her part, performed all that was required of her to be performed under the oral agreement for legal services.

44.    As a direct and proximate result of Jenner's breach of the contract, Dahlin suffered damages, including, but not limited to: lost profits for the remaining term of the Jenner Lease; lost income necessary to satisfy the tax escrow payments on the Building; and all fees paid to Jenner for the drafting of the Jenner Lease.

WHEREFORE, Dahlin requests the Court to enter judgment in her favor and against Jenner in an amount in excess of $300,000 for (i) actual compensatory and consequential damages that directly and proximately resulted from the Jenner's breach of the contract, (ii) the return of any attorney's fees and costs paid by Dahlin to Jenner, (iii) post judgment interest at the maximum rate permitted by law, (iv) and such other and further legal and equitable relief that the Court deems just.

### Count III
### Second Professional Negligence Claim
### Against Jenner, Peterson and Campbell

45.    Dahlin restates and realleges paragraphs 1 through 44 as paragraph 45 of Count III.

46.    Immediately upon receipt of the notice from the Dahlin Corporation that the Dahlin

12

Corporation would no longer pay the monthly tax escrow fee and would also retain portions of the monthly rent payments as a set-off for previously made monthly tax escrow payments, Dahlin and her husband Rodney met with Jenner, Peterson and Campbell, regarding Dahlin's legal recourse.

47.    At all relevant times thereafter, and for the second time, an attorney-client relationship was created between Dahlin and Jenner, Peterson and now Campbell.  This relationship existed simultaneously with Jenner's and Peterson's continued representation of the Dahlins in various other matters.

48.    As counsel to Dahlin, Jenner, Peterson and Campbell each had a duty to represent Dahlin competently and consistent with the customary and reasonable standards of care, skill and diligence that is ordinarily possessed and utilized by attorneys licensed to practice law and practicing law in the State of Illinois.

49.    Jenner, Peterson and Campbell failed, for the second time, to represent Dahlin competently and consistent with the customary and reasonable standards of care, skill and diligence that is ordinarily possessed and utilized by attorneys licensed to practice law and practicing law in the State of Illinois, *inter alia*, in one or more of the following ways:

   (a)    by negligently and carelessly acting in their own interest and contrary to the interests of Dahlin when they advised Dahlin that they would represent her in all matters relating to or arising out of the drafting of the Jenner Lease;

   (b)    by negligently and carelessly acting in their own interest and contrary to the interests of Dahlin when they advised Dahlin to discontinue making the monthly mortgage payments to Uptown Bank and retain any rental receipts to pay Jenner's legal fees;

   (c)    by negligently and carelessly failing to disclose to Dahlin that they were placing their

13

own interests paramount to the interests of Dahlin;

(d)    by negligently and carelessly giving harmful and detrimental advice to Dahlin when advising her that the loss of the Building through foreclosure proceedings would be an economic benefit to her and would be in her best interests;

(e)    by negligently and carelessly choosing their own interests over the interests of Dahlin when giving legal advice as to how to respond to the Tenant's refusal to pay the monthly tax escrow payment and then throughout the foreclosure proceedings;

(f)    by negligently and carelessly failing to take any action in the foreclosure proceedings against third-parties that were responsible for the institution of the foreclosure action;

(g)    by negligently and carelessly failing to take any action in the foreclosure proceeding designed to protect Dahlin's interests in the Building; and

(h)    by negligently and carelessly concealing their own unprofessional conduct (i) in giving harmful and detrimental advice to Dahlin, (ii) in representing the Land Trust and Dahlin in the foreclosure proceedings, (iii) in the course of their representation of Dahlin in the foreclosure action, failing to advise Dahlin of all of her available remedies prior to and during the foreclosure proceedings, and (iv) in failing to assert all of Dahlin's remedies in the foreclosure proceedings.

50.    As a direct and proximate result of the Defendants' second acts of negligent conduct, Dahlin suffered damages, including, but not limited to: the loss of the Building, valued in excess of $1,500,000; lost income from the lease of the building, lost future profits as a result of the loss of the Building; and all legal fees paid to Jenner stemming from the Defendants' representation of Dahlin subsequent to the May 1998 meeting.

14

WHEREFORE, Dahlin requests the Court to enter judgment in her favor and against Jenner, Peterson and Campbell, jointly and severally, in an amount in excess of $1,700,000, for (i) actual compensatory and consequential damages that directly and proximately resulted from Jenner's, Peterson's and Campbell's negligent conduct, (ii) the return of any attorney's fees and costs paid by Dahlin to Jenner, (iii) post judgment interest at the maximum rate allowed by law, and (iv) such other and further legal and equitable relief that the Court deems just.

### Count IV
### Second Breach of Contract Claim
### Against Jenner, Peterson and Campbell

51.     Dahlin restates and realleges paragraphs 1 through 50 as paragraph 51 of Count IV.

52.     In or about May 1998, Dahlin and Jenner, Peterson and now Campbell entered into a second oral agreement for legal services, whereby Jenner, through Peterson and Campbell, were to continue to represent Dahlin with regard to all subsequent legal matters, including the foreclosure proceedings, arising from the negligently drafted Jenner Lease.

53.     The Defendants breached their second contract with Dahlin, *inter alia,* in one or more of the following ways:

    (a)    by acting in their own interest and contrary to the interests of Dahlin when they advised Dahlin that they would represent her in all matters relating to or arising out of the drafting of the Jenner Lease;

    (b)    by acting in their own interest and contrary to the interests of Dahlin when they advised Dahlin to discontinue making the monthly mortgage payments to Uptown Bank and retain any rental receipts to pay Jenner's legal fees;

    (c)    by failing to disclose to Dahlin that they were placing their own interests paramount

15

to the interests of Dahlin;

    (d)    by giving harmful and detrimental advice to Dahlin when advising her that the loss of the Building through foreclosure proceedings would be an economic benefit to her and would be in her best interests;

    (e)    by choosing their own interests over the interests of Dahlin when giving legal advice as to how to respond to the Tenant's refusal to pay the monthly tax escrow payment and then throughout the foreclosure proceedings;

    (f)    by failing to take any action in the foreclosure proceedings against third-parties that were responsible for the institution of the foreclosure action;

    (g)    by failing to take any action in the foreclosure proceeding designed to protect Dahlin's interests in the Building; and

    (h)    by (i) giving harmful and detrimental advice to Dahlin in the course of their representation of Dahlin in the foreclosure action, (ii) failing to advise Dahlin of all of her available remedies prior to and during the foreclosure proceedings, and (iii) failing to assert all of Dahlin's remedies in the foreclosure proceedings.

54.    Dahlin, on her part, performed all that was required of her to be performed under the oral agreement for legal services.

55.    As a direct and proximate result of the Defendants' breach of the contract, Dahlin suffered damages, including, but not limited to: the loss of the Building, valued in excess of $1,500,000; lost income from the lease of the building, lost future profits as a result of the loss of the Building; and all legal fees paid to Jenner stemming from the Defendants' representation of Dahlin subsequent to the May 1998 meeting.

WHEREFORE, Dahlin requests the Court to enter judgment in her favor and against Jenner, Peterson and Campbell, jointly and severally, in an amount in excess of $1,700,000, for (i) actual compensatory and consequential damages that directly and proximately resulted from the Jenner's Peterson's and Campbell's breach of contract, (ii) the return of any attorney's fees and costs paid by Dahlin to Jenner, (iii) post judgment interest at the maximum rate permitted by law, and (iv) such other and further legal and equitable relief that the Court deems just.

## Count V
### Fraud and Fraudulent Concealment
### Against Jenner, Peterson and Campbell

56.     Dahlin restates and realleges paragraphs 1 through 55 as paragraph 56 of Count V.

57.     Jenner, Peterson and Campbell knowingly made, engaged in, gave or concealed, *inter alia*, one or more of the following materially untrue facts and/or statements and deliberately harmful advice to Dahlin with the plain intention of inducing Dahlin to forego exercising her many legal rights and remedies against the Defendants and others and to cover up Jenner's malfeasance in the drafting of the Jenner Lease, by:

(a)     knowingly and intentionally providing false information to Dahlin in stating that Dahlin had no action against Jenner because no one from Jenner was present for the execution of the Jenner Lease;

(b)     knowingly and intentionally advising Dahlin that she had no other viable choice but to acquiesce in the foreclosure action, even though she could have brought an action against Jenner for damages suffered as a result of the negligently drafted Jenner Lease;

(c)     knowingly and intentionally failing to disclose to Dahlin the Defendants' conflict of interest created when they entered into the second legal services agreement with

17

Dahlin;

(d)     knowingly and intentionally concealing from Dahlin the many causes of action Dahlin

possessed against them by reason of their unprofessional conduct;

(e)     knowingly and intentionally giving deliberately harmful advice to Dahlin that the loss

of the Building through foreclosure proceedings would be an economic benefit to her

and in her best interests;

58.     Dahlin relied upon the material representations, statements, omissions, concealments

and deliberately harmful advice of Jenner, Peterson and Campbell, aforesaid, acquiesced in same, and

by relying thereon, did not and could not exercise her legal rights and remedies against the Defendants

and others.

59.     As a direct and proximate result of the fraudulent, material misrepresentations,

statements, omissions, concealments and deliberately harmful advice of Jenner, Peterson and

Campbell, and Dahlin's reliance thereon, Dahlin suffered damages, including, but not limited to: the

loss of the Building, valued in excess of $1,500,000; lost income from the lease of the building, lost

future profits as a result of the loss of the Building; and all legal fees paid to Jenner stemming from

the Defendants' representation of Dahlin subsequent to the May 1998 meeting. .

60.     Dahlin is entitled to punitive damages.

WHEREFORE, Dahlin requests the Court to enter judgment in her favor and against Jenner,

Peterson and Campbell, jointly and severally, for (i) actual compensatory and consequential damages

that directly and proximately resulted from Jenner's, Peterson's and Campbell's fraudulent conduct,

(ii) the return of any attorney's fees and costs paid by Dahlin to Jenner, (iii) punitive damages, (iv)

pre-judgment and post judgment interest at the maximum rate permitted by law, (v) attorneys fees

18

and costs incurred by Dahlin in this litigation, and such other and further legal and equitable relief the Court deems just.

Respectfully submitted,

BARBARA L. DAHLIN

By _____

One of her Attorneys

Edward J. Burke (ARDC # 342653)
Vincent D. Pinelli (ARDC # 3122437)
R. Bruce Slocum (ARDC # 6227143)
BURKE BURNS & PINELLI, LTD.
Three First National Plaza, Suite 3910
Chicago, IL 60602 (312) 541-8600

19

## CERTIFICATE OF SERVICE

I, R. Bruce Slocum, an attorney, on oath state that I caused this Notice and **Plaintiff's Second Amended Complaint** to be served on the party to whom it is addressed by hand delivery and by depositing the same in the U.S. mail chute at Three First National Plaza, Chicago, Illinois 60602, before the hour of 5:00 p.m. on August 24, 2001, with proper postage prepaid.

_____
R. Bruce Slocum