Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 1725 | DATE | 10/5/2001 |
| CASE TITLE | DAHLIN vs. JENNER & BLOCK et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Pursuant to Memorandum Opinion and Order entered this day, defendants' motion to dismiss is granted. Count V of the second amended complaint is dismissed in its entirety with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | OCT 9 - 2001 | |
| | Notified counsel by telephone. | date docketed | 31 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 10/5/2001 date mailed notice | |
| JS | courtroom deputy's initials | FILED FOR DOCKETING 01 OCT -5 AM 11: 40 | JS |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BARBARA L. DAHLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 01 C 1725 |
| JENNER & BLOCK, L.L.C., an Illinois ) | |
| Limited Liability Company, ) | |
| RONALD R. PETERSON, ESQ., and ) | |
| CHRISTY L. CAMPBELL, ESQ., ) | |
| ) | |
| Defendants. ) | |
| ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On August 24, 2001, plaintiff Barbara L. Dahlin ("Dahlin") filed a five-count second amended complaint. The allegations set out in the second amended complaint allege a claim of professional negligence in Counts I and III, a claim of breach of contract in Counts II and IV, and a claim of fraud and fraudulent concealment in Count V. On September 7, 2001, defendants Jenner & Block, L.L.C. ("Jenner & Block"), Ronald R. Peterson, Esq. ("Peterson"), and Christy L. Campbell, Esq. ("Campbell"), filed a motion to dismiss Count V of plaintiff's second amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the following reasons, defendants' motion is GRANTED. Count V is dismissed in its entirety with prejudice.

1

## STATEMENT OF FACTS[1]

In July 1993, Dahlin was the sole beneficiary of Uptown National Bank ("Uptown"), Land Trust No. 89-128 ("Land Trust"). The Land Trust consisted of a 48,000 square foot industrial building located at 2451 Estes Avenue, Elk Grove Village, Illinois ("Building"). Prior to July 1993, Dahlin entered into a $925,000 mortgage ("Mortgage") with Uptown, the terms of which required the Land Trust to pay Uptown $9,000 per month in principal and interest, and an additional $6,000 per month to a real estate tax escrow maintained at Uptown for the payment of annual general real estate taxes on the Building as they became due. In July 1993, Dahlin entered into a "triple net lease agreement" with the C.A. Dahlin Company[2] ("Company"), the terms of which required the Company (i) to pay the Land Trust $11,595 per month in rent, (ii) to pay $6,000 directly into the Uptown real estate tax escrow, (iii) to pay all insurance premiums to insure the Building and (iv) to pay all costs of the Building's maintenance. The lease and its terms were carefully crafted to insure and to secure the repayment of the Mortgage.

In or about February 1997, Dahlin entered into an oral legal services agreement with Jenner & Block and Peterson to represent her and to protect her interests with respect to the preparation and execution of the new industrial lease between the Land Trust and the Dahlin Corporation ("Corporation"). At that time, Dahlin and Dahlin's husband, Rodney, presented and handed over to Jenner & Block and Peterson a copy of the then existing 1993 industrial lease between the Land

---

[1] In considering the merits of a motion made pursuant to Federal Rule of Civil Procedure 12(b)(6), the well-plead allegations of the complaint must be accepted as true. Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 (7th Cir. 1997). Accordingly, the facts alleged in plaintiff's second amended complaint are taken as true and set-out in this opinion.

[2] Plaintiff's husband, Rodney Dahlin, was involved with the operation of the Company and the ultimate sale of the Company to the Dahlin Corporation.

2

Trust and the Company. Dahlin gave the 1993 lease to Jenner & Block and Peterson to ensure that agreed-upon provisions of 1993 lease be included in the new lease. Dahlin made clear to Jenner & Block and Petersen that the same provisions and identical economic terms that were contained in the 1993 lease be duplicated, contained and set forth in the new industrial lease between the Land Trust and the Corporation.

In or about June and July 1997, a new industrial lease between the Land Trust and the Corporation was prepared by Jenner & Block, Peterson and, a then associate of Jenner & Block, Ferdinand Gallo ("Gallo"). The new lease was executed in August, 1997 ("1997 Lease"). The 1997 Lease did not contain the same provisions and identical economic terms as the 1993 lease. Instead, the 1997 Lease wholly omitted the entire provision requiring the Corporation to pay the annual general real estate taxes on the Building.

From August, 1997 until May, 1998, however, the Corporation, itself, believing that the 1997 Lease had incorporated the identical economic terms that had been contained in the 1993 lease, paid (i) monthly rent to the Land Trust in the amount of $11,595, (ii) monthly real estate tax escrow payments to Uptown in the amount of approximately $6,000, (iii) all insurance premiums to insure the Building and (iv) all of the Building's maintenance expenses. On May 12, 1998, however, the Corporation notified Dahlin by letter that it had been erroneously paying real estate taxes for the Building and that it would no longer make future real estate tax escrow payments to Uptown because the 1997 Lease did not provide for the payment of real estate taxes. The Corporation further notified Dahlin that it intended to offset future rent payments by $58,035.20, the amount it then claimed it had already paid into the Upton real estate escrow account by mistake.

Immediately upon receipt of the notice from the Corporation, Dahlin and her husband

confronted Jenner & Block, Peterson and Peterson's then legal associate, Campbell, with the fact that Jenner & Block, Peterson and Ferdinand Gallo ("Gallo"), a then associate of Jenner & Block, had failed to include the real estate tax escrow provision in the 1997 Lease. At that time, Peterson and Campbell acknowledged that Jenner & Block had failed to include and insert into the 1997 Lease the real estate tax provision and advised Dahlin and her husband, *inter alia,* (i) that they would represent Dahlin should a foreclosure action be instituted by Uptown, (ii) that since Dahlin would be unable to meet her mortgage obligations to Uptown without the required Corporation tax escrow payments, the principal and interest due Uptown should no longer be paid but rather held for payment of future Jenner & Block fees, and (iii) that foreclosure on Dahlin's Building would be in her best interest. Further, Jenner & Block, Peterson and Campbell advised Dahlin that instead of making the Mortgage payments with any future rent checks she received from the tenant, Dahlin should retain the deposits to pay subsequent legal fees to Jenner & Block.

Dahlin did not make the monthly payments to Uptown as required by the Mortgage. On August 13, 1998, Uptown filed its foreclosure action against the Land Trust and Dahlin in the Circuit Court of Cook County. Jenner & Block, Peterson and Campbell entered their appearance for and on behalf of the Land Trust and Dahlin in the foreclosure action and represented the Land Trust and Dahlin throughout the foreclosure proceedings. During the course of the foreclosure proceedings, Jenner & Block, Peterson and Campbell repeatedly advised Dahlin not to actively defend against the foreclosure, that the foreclosure was in her best interest and that there was no viable legal alternative. On May 27, 1999, a Judgment of Foreclosure and Sale in favor of Uptown was entered in the foreclosure proceedings. Shortly thereafter, on July 1, 1999, the Cook County Circuit Court entered judgment in favor of Uptown and Dahlin lost her right, title and interest in the Building, then valued

in at about $1,500,000.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows this court to dismiss a complaint that fails to state a claim upon which relief may be granted. In considering the merits of a motion made pursuant to Rule 12(b)(6), the well-plead allegations of the complaint must be accepted as true. Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1319 (7th Cir. 1997). In addition, all ambiguities will be construed in favor of the plaintiff. Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1205 (7th Cir. 1998). A court generally should only dismiss a complaint where it is clear that no relief could be granted with the allegations. Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984). Additional facts submitted outside of the pleadings will be explicitly excluded and not considered, except those documents that are attached to the motion to dismiss, are referred to in the complaint and are central to the plaintiff's claims. Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998).

## ANALYSIS

I.     Failure to Plead Elements of Common Law Fraud

     A.     Choice of Law

In diversity of citizenship jurisdiction, a district court applies the substantive law of the forum state, including the rules governing the choice of law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). This court therefore applies the choice of law rules set forth in the Restatement (Second) of Conflicts of Law, which Illinois has adopted. Suzik v. Sea-Land Corp., 89 F.3d 345, 348 (7th Cir.1996); Ingersoll v. Klein, 46 Ill.2d 42, 262 N.E.2d 593, 595 (1970). The Second Restatement requires that a court apply the substantive law

5

of the state with the most significant relationship to the tort at issue. Id. In this case, it is undisputed that the state with the most significant relationship to the torts at issue is Illinois. Therefore, this court will apply the substantive law of Illinois to this case[3].

B.     Common Law Fraud

Count V in the second amended complaint alleges fraud and fraudulent concealment. In Illinois, to state a claim for fraud, a plaintiff must allege: (1) that defendant made a statement or omission; (2) that the statement was material; (3) that the statement was untrue; (4) that the defendant knew the statement was untrue or was in culpable ignorance of the statement's veracity; (5) that the defendant had the intent that plaintiff rely on the statement; (6) that plaintiff actually relied on the statement; and (7) the reliance resulted in damages to the plaintiff. Small v. Sussman, 306 Ill. App. 3d 639, 646, 713 N.E.2d 1216, 1221 (1 Dist. 1999). Upon review of the second amended complaint, this court finds that Count V fails to allege that the statements by Peterson, Campbell, and Jenner were untrue statements of *material fact* and that defendants knew the statements were untrue at the time the statements were made (emphasis added).

In Illinois, "matters of fact are to be distinguished from expressions of opinion, which cannot form the basis of an action of fraud." Marino v. United Bank of Illinois, N.A., 137 Ill. App. 3d 523, 527, 484 N.E.2d 935, 938 (2nd Dist. 1985). A representation is one of opinion rather than fact if it "only expresses the speaker's belief, without certainty, as to the existence of a fact." Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor, 295 Ill. App. 3d 567, 571, 692 N.E.2d 812, 816 (1st Dist. 1998) (citations omitted). The United States Court of Appeals for the Seventh Circuit

---

[3]In addition, since neither party raised a conflict of law issue in this diversity of citizenship suit, the governing law in any case is that of the forum state, Illinois. Transamerica Ins. Co. v. South, 975 F.2d 321, 327 (7th Cir.1992).

also has explained the difference between non-actionable opinions and actionable misrepresentations of material fact:

> To establish fraud under Illinois law, the defendants must prove a misrepresentation of fact [citations omitted]. . . . A statement which is merely an expression of opinion or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law.

Continental Bank, N.A. v. Meyer, 10 F.3d 1293, 1298 (7th Cir.1993)(citations omitted).

In Count V, Dahlin alleges that Jenner & Block, Peterson, and Campbell failed to disclose a conflict of interest when they agreed to represent Dahlin in the foreclosure proceeding. (Pl.'s Second Am. Compl. ¶ 57(c).) Dahlin further alleges that Jenner & Block, Peterson, and Campbell knowingly and intentionally misinformed her that she had "no other viable choice but to acquiesce in the foreclosure action," that it was "in her best interests" and additionally that "had no action against [Jenner & Block]" for the negligent drafting of the 1997 Lease or other unprofessional conduct. (Pl.'s Second Am. Compl. ¶ 57(a)-(e).) Upon review of the second amended complaint, this court finds that the allegations in Count V are merely restatements of Dahlin's legal malpractice and breach of contract claims in Counts I through IV of the second amended complaint and do not sufficiently state a claim for common law fraud. Dahlin fails to sufficiently allege that the statements noted in paragraph 57 of Count V, made by Jenner & Block, Peterson and Campbell, were false statements of material fact. These alleged statements and omissions by Jenner & Block, Peterson, and Campbell all were in the context of their legal representation of Dahlin during the foreclosure proceeding, and are expressions of opinion by attorneys. As such, the alleged statements are not statements of material fact, but of opinion, prediction or advice. Dahlin's allegation that Jenner & Block, Peterson, and Campbell gave her bad advice is already appropriately addressed in

her malpractice and breach of contract claims.

Furthermore, Dahlin fails to sufficiently plead the materiality of Jenner & Block, Peterson, and Campbell's statements in Count V. The record indicates that prior to their representation of Dahlin in the foreclosure proceedings, Jenner & Block, Peterson, and Campbell informed Dahlin that they had failed to include and insert a material economic term into the 1997 Lease. (Pl.'s Second Am. Compl. ¶¶ 23-25.) Dahlin nevertheless accepted Jenner & Block, Peterson, and Campbell's continued representation of her in the subsequent foreclosure proceedings. (See id.) Dahlin does not sufficiently allege that, had she been aware of any of Jenner & Block, Peterson, and Campbell's statements and omissions listed in Count V, she would have acted differently. Finally, Dahlin fails to allege that Jenner & Block, Peterson, and Campbell *knew* the statements were false *at the time* they made the statements (emphasis added). Alleging that they "knowingly and intentionally" made materially untrue statements is not the same as alleging that they made materially untrue statements knowing they were untrue at the time.

II. Failure to Plead With Particularity Required By Rule 9(b)

Even if this court were to find Dahlin properly alleged the elements of common law fraud, Count V would still fail because Dahlin failed to plead Count V with sufficient particularity as required by Rule 9(b). To state a claim for fraud, a plaintiff must not only properly allege the elements of fraud, but must also satisfy the particularity requirements of Federal Rule of Civil Procedure Rule 9(b). See Arazie v. Mullane, 2 F.3d 1456, 1465 (7th Cir. 1993). "[M]ere allegations of fraud or averments to conditions of mind, or references to plans and schemes are too conclusional to satisfy the particularity requirements." Graue Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago 927 F.2d 988, 993 (7th Cir. 1991). Rule 9(b) mandates that the plaintiff specifically

8

allege the who, what, where, and when of the alleged fraud. See Ackerman v. Northwestern Mut. Life Ins. Co., 172 F.3d 467, 469. (7th Cir. 1999). Conclusory allegations will not substitute for well-pled facts. See Small v. Sussman, 306 Ill. App. 3d 639, 646, 713 N.E.3d 1216, 1221 (1 Dist. 1999). Upon a review of the record, this court finds that the generalized and conclusory allegations in Count V do not satisfy Rule 9(b) particularity requirements.

In Count V, Dahlin asserts that in an effort to "cover up [their] malfeasance," Jenner & Block, Peterson, and Cambpell knowingly "made, engaged in, gave or concealed . . . one or more" of the following:

(a) knowingly and intentionally providing false information to Dahlin in stating that Dahlin had no action against Jenner because no one from Jenner was present for the execution of the Jenner Lease;
(b) knowingly and intentionally advising Dahlin that she had no other viable choice but to acquiesce in the foreclosure action, even though she could have brought an action against Jenner for damages suffered as a result of the negligently drafted Jenner Lease;
(c) knowingly and intentionally failing to disclose to Dahlin the Defendants' conflict of interest created when they entered into the second legal services agreement with Dahlin;
(d) knowingly and intentionally concealing from Dahlin the many causes of action Dahlin possessed against them by reasons of their unprofessional conduct;
(e) knowingly and intentionally giving deliberately harmful advice to Dahlin that the loss of the Building through foreclosure proceedings would be an economic benefit to her and in her best interests.

(Pl.'s Second Am. Compl. ¶ 57.)

In Count V, Dahlin does not further allege when or where these statements took place, or specifically who made them. Dahlin does not distinguish between Peterson and Campbell anywhere in Count V. Although Dahlin incorporates paragraphs 1 through 55 of the second amended complaint as part of Count V, this does not remedy the lack of Rule 9(b) particularity. The only additional specificity the incorporated paragraphs provide is that at a meeting "on or about May 12, 1998," Peterson and

9

Campbell informed Dahlin that they would represent her in the future proceedings, that she should discontinue mortgage payments on the building, that the future income from the building should be held for paying fees to Jenner, and that a foreclosure on the building would be in Dahlin's best interest. (Pl.'s Second Am. Compl ¶¶ 23-25.). The rest of the fraudulent statements or omissions alleged in Count V took place at some other point "during the course of the foreclosure proceedings." (Id. ¶ 29.) The generalized and conclusory allegations in Count V are not enough to satisfy the who, what, where, and when particularity requirements of Rule 9(b).

III.     Failure to Comply With Court's Previous Order

As a general rule, leave to amend the party's pleading can be "freely given when justice so requires." Fed. R. Civ. P. 15(a). Granting or denying a motion for leave to file an amended pleading is a matter purely within the sound discretion of the district court. See J.D. Marshall Intern., Inc. v. Redstart, Inc., 935 F.2d 815, 819 (7th Cir. 1991). Leave to amend the pleadings may be denied for "apparent or declared reasons" such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Id. In this case, due to Dahlin's failure comply with the court's previous order to cure deficiencies in her claim of fraud and fraudulent concealment, Count V is dismissed in its entirety with prejudice.

Previously, on July 26, 2001, this court dismissed the fraud and fraudulent concealment count in Dahlin's first amended complaint for failure to allege the elements of common law fraud and failure to plead with Rule 9(b) particularity; these are the same reasons this court dismisses Count V today. On July 26, 2001, Dahlin was ordered to file a well-pleaded second amended complaint consistent with Illinois law and the court's mandates, and informed that failure to do so would result

in an automatic dismissal of this case in its entirety with prejudice. In Count V of her second amended complaint, Dahlin realleged a claim of fraud and fraudulent concealment that was almost identical to the fraud and fraudulent concealment claim this court dismissed on July 26, 2001. Dahlin has failed to remedy the deficiencies that plagued her earlier attempts to state a claim of fraud and fraudulent concealment. Accordingly, Count V of Dahlin's second amended complaint is dismissed in its entirety with prejudice.

## CONCLUSION

For the above stated reasons, defendants' motion to dismiss is GRANTED. Count V of plaintiff's second amended complaint is dismissed in its entirety with prejudice.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: October 5, 2001